23838. SLAPPEY *v.* THE STATE.

DECIDED OCTOBER 26, 1934.

*G. Y. Harrell,* for plaintiff in error.
*Hollis Fort, solicitor general,* contra.

MacIntyre, J.  Henry Slappey was convicted of burglary, and his motion for a new trial was overruled.  He thereupon filed exceptions to the judgment overruling the motion for a new trial.

The counsel for the plaintiff in error states that there is no doubt of the guilt of Slappey of larceny from the house, but contends that the evidence did not authorize a conviction of burglary, for the reason that it did not show that there was a breaking, within the meaning of the law relating to burglary.  The testimony in effect with reference to the breaking was given by the prosecutor as follows: "I can't say that my dwelling house was broken into. It was entered.  I was at home all that day and locked my house when I went off [to Mr. Dillard's], locked my doors and windows." The prosecutor further testified that just prior to the time he went to Mr. Dillard's, he had called the defendant out of the field late in the afternoon, to bring the horse and put him in the stable, and when the prosecutor went into the stable to feed the horse, which took about twelve minutes, "Slappey [defendant] was standing between the well and the woodpile, about twenty feet east of the house.  I did not see him when I came back.  After I found these things in the hydrangea bush, I formed an idea how he got in.  I did not see evidences that the windows had been broken in, or locks broken, and no evidence of a door being broken or pushed open. The doors and windows were all screened.  There was no opening in my house that a man could get in there without removing some obstruction."

The defendant knew that the prosecutor was going to Mr. Dillard's.  On cross-examination the prosecutor testified that he went back in the house after feeding his horse, picked up his hat and stick, and went out the back-door, and put the key in his pocket. He also testified on cross-examination, "According to my theory, he [the defendant] slipped in the house and hid and was in there when I was gone to Dillard's."

By using the expression, "There was no opening in my house that a man could get in there without removing some obstruction," did the prosecutor mean to say that when he went out to feed his horse, he shut and locked the back door?  Or, did he mean to say that when the doors or windows or screens were shut there was no opening in his house that a man could get in without removing some obstruction?  He swore on both direct and cross-examination

that he locked the doors and windows when he went to Mr. Dillard's. He did not swear that he shut or locked the back door when he went out to feed his horse prior to the time he went to Dillard's, unless the expression, "There was no opening in my house that a man could get in there without removing some obstruction," is so construed. Of course, if the door was open and the defendant went in the open door without opening the same, he would not be guilty of burglary; and it seems to us that it is wholly uncertain whether the back door was closed at the time the defendant went out to feed his horse, so as to show there was such a breaking as is necessary to constitute burglary. *Williams* v. *State,* 52 *Ga.* 581; *Kelly* v. *State,* 82 *Ga.* 441 (9 S. E. 171); *Waters* v. *State,* 53 *Ga.* 567.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*